## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MINERVA ESCATEL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 3:14-CV-02517-B-BK** |
| | § | |
| **CAROLYN COLVIN,** | § | |
| **Acting Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation on the parties' cross motions for summary judgment.  For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 13, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 14, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

## I.  BACKGROUND

### A.    Procedural History

Plaintiff filed an application for disability insurance benefits and supplemental security income in July 2011, alleging a disability onset date in June 2010.  Doc. 11-3 at 16; Doc. 11-6 at 2-10.[1]  Her application was denied at all administrative levels, and she now appeals to the United States District Court pursuant to 42 U.S.C. § 405(g).  Doc. 11-3 at 2-5, 16-34; Doc. 11-5 at 2-9, 14-19.

---

[1]  The following background comes from the transcript of the administrative proceedings, which can be found at Doc. 11.

**B.**     <u>Facts</u>

Plaintiff was 47 years old on the date of her disability onset.  [Doc. 11-3 at 32](); [Doc. 11-6 at 2]().  She completed the ninth grade and had no schooling or training after that.  [Doc. 11-3 at 43]().  She had past relevant work as a babysitter, box maker, silk screen printer, and housekeeping cleanin Plaintiff was 47 years old on the date of her disability onset.  [Doc. 11-3 at 32](); [Doc. 11-6 at 2]()

She had past relevant work as a babysitter, box maker, silk screen printer, and housekeeping supervisor.  [Doc. 11-3 at 64-65]().  In terms of her medical history, Plaintiff went to the hospital in June 2010 for heel and ankle pain and was given prescription pain medication and crutches.  [Doc. 11-8 at 2-4](), 7.  An x-ray revealed that she had a heel spur.  [Doc. 11-8 at 11]().  In January 2011, Plaintiff presented to the hospital with lower back pain that began after she moved a dresser.  [Doc. 11-10 at 25]().  She exhibited tenderness in the lumbar region, but had a negative straight leg raise test, normal muscle tone and reflexes, and a normal gait.  [Doc. 11-10 at 26]().  She was discharged with pain medication.  [Doc. 11-10 at 24]().  A CT scan taken that month revealed that Plaintiff had a mild posterior broad based disc bulge at L4-L5 and minimal spondylosis of the lumbar spine, but the spinal canal and bilateral neural foramina were ample throughout the lumbar spine.  [Doc. 11-9 at 7-8]().

In February 2011, Plaintiff again went to the hospital for back pain, complaining that the pain was constant and worsening over the past six months and not associated with any known injury.  [Doc. 11-10 at 22]().  She exhibited a decreased range of motion in her back, had a positive straight leg raise test, and was unable to stand on her toes due to pain and numbness in her right foot.  [Doc. 11-10 at 23]().  An MRI revealed that Plaintiff had narrowing of the L4-5 disc space, a

disc protrusion at L4-5 with some degeneration of her bilateral sacroiliac joints, and a right annular tear at L4-5, but no neural foraminal stenosis. Doc. 11-10 at 19-20.

In May 2011, Plaintiff went to a pain management clinic and was seen by Dr. Gerald Matchett. Doc. 11-10 at 9. She stated that she had radicular and axial low back pain and that her pain was frequently at ten on ten-point scale. Doc. 11-10 at 9-10. Dr. Matchett noted that Plaintiff's imaging studies revealed that she had "some degree" of degenerative disc disease, as well as facet hypertrophy, but he did not see any severe spinal stenosis. Doc. 11-10 at 10. He recommended that she have blocking injections done, that her medication be increased, and that she do back exercises. Doc. 11-10 at 11. Plaintiff had both blocks performed in June 2011, but continued to complain of pain. Doc. 11-9 at 27, 38-39, 44-45. Dr. Matchett noted that Plaintiff had lumbar spasms, but her straight leg raise test was essentially negative, and she was able to heel walk, toe walk, and squat without difficulty. Doc. 11-9 at 28.

In September 2011, Plaintiff presented for a consultative examination performed by Dr. Harold Nachimson, M.D. Dr. Nachimson noted Plaintiff's complaint of right shoulder discomfort and explanation that she had a rotator cuff tear repaired in 1999, right-sided knee pain for which she had an arthroscopic procedure done previously, and lower back pain which was ten of ten in severity. Doc. 11-10 at 34. Plaintiff told the doctor that she could walk about three blocks, sometimes needed help putting her shoes on, and that she did light cooking and light housework. Doc. 11-10 at 35. She was able to tiptoe and heel walk, although the doctor noted that she "complained bitterly of any movements," and she had a positive straight leg raise test. Doc. 11-10 at 35. Dr. Nachimson noted that he was not able to obtain any deep tendon reflexes, and Plaintiff had loss of sensation to sharp pain along the right leg and in the right hand, although her muscle strength was generally normal. Doc. 11-10 at 37. Dr. Nachimson observed

3

that Plaintiff "seemed to tend to have a lot of pain pattern" and that any movement "was accompanied with a description of sharp pain fairly consistently with everything that was touched," yet she used no assistive devices or braces.  Doc. 11-10 at 38.  Plaintiff had full range of motion in her shoulders, elbows, and wrists and could use her hands without difficulty, as Dr. Nachimson observed that she was able to fill out a form in a clear and well-written manner.  Doc. 11-10 at 37-38.

C.   **Administrative Hearing**

At the administrative hearing, Plaintiff testified that she crochets, but if she is writing, the pen will fall out of her hand, and she drops things because of her old rotator cuff injury.  Doc. 11-3 at 59-60.  She also noted that she had carpal tunnel surgery on her right hand.  Doc. 11-3 at 60.  A vocational expert ("VE") testified that a person could not perform Plaintiff's past relevant work if that individual was Plaintiff's age; had a limited education and the same past work experience as Plaintiff; could occasionally lift/carry 20 pounds; could frequently lift/carry ten pounds; could stand/walk/sit for six hours in an eight-hour workday; required a sit/stand option allowing her to change positions every 30-45 minutes; could occasionally perform pushing/pulling with her bilateral upper and lower extremities; could occasionally stoop and climb ramps or stairs; could never climb ladders, ropes or scaffolds; could frequently balance; and had to avoid concentrated exposure to vibration and dangerous machinery.  Doc. 11-3 at 65-66.

However, the VE testified that there was still one job that Plaintiff could perform, which was a nut and bolt assembler with 80,000 positions nationwide and approximately 1,000 in Texas.  Doc. 11-3 at 66.  Further, the VE testified that her testimony was consistent with the descriptions and definitions provided for in the Dictionary of Occupational Titles ("DOT") as

well as her field vocational experience, education, and training.  Doc. 11-3 at 67.  Plaintiff's counsel then questioned the VE as to how she accounted for the limitation of occasional pushing and pulling with the bilateral upper extremities in determining that someone with Plaintiff's limitations could work as a nut and bolt assembler.  Doc. 11-3 at 68.  The VE responded that, based on her field experience and job analyses, she learned that such jobs were more like bench work which involved putting nuts and bolts together and very minimal pushing or pulling.  Doc. 11-3 at 68.

**D.    The ALJ's Findings**

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Doc. 11-3 at 18-19.  At step two, the ALJ found the Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with axial mechanical spine pain, lumbar radiculopathy, lumbar spondylosis, axial and radicular low back pain, lumbar myofasciitis with some neuropathic changes involving the right lateral side of the lower extremities, calcaneal spurring in the right ankle, bilateral carpal tunnel syndrome status post right wrist surgery, rotator cuff tear status post repair procedure, right knee internal derangement and meniscal tear status post arthroscopic surgery, mild obesity with body mass index around 33, and mild depression.  Doc. 11-3 at 19.  At step three, the ALJ determined that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the Listings.  Doc. 11-3 at 19-21.  Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work to the extent described to the VE.  Doc. 11-3 at 22.  Given that RFC, the ALJ determined that Plaintiff could not perform her past relevant work.  Doc. 11-3 at 31-32.  However, the ALJ concluded that Plaintiff was not disabled because she could still perform the job of a nut and bolt assembler.

Doc. 11-3 at 33.  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the

Act.  Doc. 11-3 at 33.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C.

§ 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled: (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing her past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes her from performing her past work, other factors

including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden

shifts to the Commissioner at step five to show that there is other gainful employment available

in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

### III.   ARGUMENT AND ANALYSIS

**A.**      **Whether there was other work Plaintiff could perform in light of the RFC**

Plaintiff argues that the DOT defines the job of a nut and bolt assembler as requiring the ability to "hold[] nut in chuck of nut-turning machine that spins," "push[] box or carton along bench or onto conveyor" and "feed nuts and bolts into hopper of machine."  Doc. 13 at 10. Plaintiff asserts that given her limited RFC, which restricted her pushing and pulling and exposure to vibrations and dangerous machinery, she could not perform those job tasks.  Doc. 13 at 10-11.  Plaintiff also contends that the ALJ did not identify or explain the conflicts between the VE's testimony and the information in the DOT which requires exposure to vibration and dangerous machinery in the form of a spinning nut-turning machine, a conveyor belt, and a hopper machine.  Doc. 13 at 11-12.  Plaintiff claims that this was a clear violation of Social Security Ruling 00-4p.  Doc. 13 at 12.

Defendant responds that the VE stated that her testimony was consistent with the DOT as well as her field vocational experiences, her education, and her training.  Doc. 14 at 6.  As such, the ALJ was entitled to rely on the VE's knowledge of job requirements.  Doc. 14 at 6. Moreover, Defendant notes that Plaintiff's counsel failed to elicit from the VE any particular discrepancies between her testimony and the DOT and, thus, should not be heard to complain now.  Doc. 14 at 6-7.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  RFC refers to the most that a claimant can do despite her physical and mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether a claimant can work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Although the testimony of a VE is not required to make a step 4 determination, an ALJ may utilize such expert testimony.  A VE is called to testify because of her familiarity with job requirements and working conditions.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)).  "The value of a [VE] is that [she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan*, 58 F.3d at 132.  When a VE provides evidence about the requirements of a job, the ALJ (1) must ask the VE if the evidence she has provided conflicts with information provided in the DOT; and (2) if the VE's evidence appears to conflict with the DOT, the ALJ must obtain an explanation for the conflict and determine whether the VE's explanation is reasonable and provides a basis for relying on her testimony

rather than the DOT.  SSR 00-4p, 2000 WL 1898704, at *2, 4 (S.S.A. Dec. 4, 2000).  The DOT's

description of the job of nut and bolt assembler is as follows:

> Couples and packages nuts and bolts: Screws nut on bolt by hand and holds nut in
> chuck of nut-turning machine that spins and tightens nut on bolt.  Weighs or
> counts specified amounts of nuts and bolts, and records number of units on
> production form.  Pushes box or carton along bench or onto conveyor.  May tie
> long bolts into bundles, using wire.  May feed nuts and bolts into hopper of
> machine that automatically couples and packages nuts and bolts.

DOT § 929.587-010.  On the other hand, the VE in this case described the job of nut and bolt

assembler as generally involving coupling the pieces together at a work bench.

A VE's testimony may give rise to a conflict with the DOT in at least three ways.  First,

the VE may testify that a particular job requires a specific exertional or skill level when the DOT

expressly provides that the job requires a different exertional or skill level.  *Carey v. Apfel*, 230

F.3d 131, 144 n.2 (5th Cir. 2000).  That constitutes a direct and obvious conflict where the ALJ

is asked to accept the VE's testimony even though it is in actual conflict with the DOT's

provisions.  *Id.*  Another, less direct type of conflict may occur when the VE's testimony places

the ALJ's RFC finding or the claimant's specific impairments in conflict with the exertional or

skill level required for the identified jobs in the DOT.  *Id.*  Third, there may be an "implied or

indirect" conflict, which is characterized as being tangential in nature and unapparent until

further inference is made.  *Id.* at 145-47.  Nevertheless, "[p]rocedural perfection in

administrative proceedings is not required" as long as "the substantial rights of a party have not

been affected."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Social Security Rulings represent "statements of policy and interpretations" adopted by

the Social Security Administration that are "binding on all components" of the Administration.

20 C.F.R. § 402.35(b)(1).  Nevertheless, these interpretive rulings are not binding on the courts,

so courts need not give them the force and effect of law.  *Batterton v. Francis*, 432 U.S. 416, 425

n. 9, (1977) (noting the varying degrees of deference the rulings may be afforded). However, courts may, as the Fifth Circuit frequently has, "rel[y] upon the rulings in evaluating ALJs' decisions." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam).

An ALJ's violation of a ruling is generally reversible legal error if the error results in prejudice. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam) ("Should an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and any actions resulting from the proceeding cannot stand."). Indeed, the Fifth Circuit has ruled that even when the ALJ fails to discover and address conflicts between a VE's testimony and the DOT, the claimant is not entitled to relief unless he can show that he was prejudiced by the alleged error. *See McMillian v. Colvin*, No. 12-cv-661-A, 2014 WL 61172, at *5 (N.D. Tex. 2014) (McBryde, J.) (citing *DeLeon v. Barnhart*, 174 F. App'x 201, 203 (5th Cir. 2006)). A claimant establishes the requisite prejudice by showing that, "if the ALJ had fully developed the record," additional evidence would have been produced that "might have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). For instance, the United States District Court for the Eastern District of Texas held that "prejudice was self-evident" when the ALJ did not perceive that any conflict existed and did not ask about any potential conflict because the VE might change his mind when presented with the conflict or the ALJ might not be satisfied with the VE's attempt to dismiss the conflict. *See Romine v. Barnhart*, 454 F. Supp. 2d 623, 628-29 (E.D. Tex. 2006).

In this case, after the ALJ questioned the VE about the nut and bolt assembler job, Plaintiff's attorney asked the VE how she accounted for the RFC's limitation on pulling and pushing with the upper extremities. Doc. 11-3 at 68. The VE responded that, based on her field vocational experience and job analysis, the job involved very minimal pushing and pulling. Doc.

11-3 at 68.  There was no conflict between the VE's testimony and the DOT in this case because the DOT did not quantify the amount of pulling and pushing required for the nut and bolt assembler position.  DOT § 929.587-010.  Moreover, the ALJ was entitled to rely on the VE's expertise in this area when she testified that pushing and pulling were minimal.  *Vaughan*, 58 F.3d at 132.

As for the RFC's limitations on concentrated exposure to dangerous machinery and vibrations, the VE's testimony created a "less direct" conflict at most because the VE testified that, in her experience, nut and bolt assemblers mostly coupled the two pieces, which does not wholly comport with the DOT description listing several additional duties for that job. Additionally, the ALJ did not identify and obtain an explanation for the conflicts between the VE's testimony and the DOT, which is a violation of SSR 00-4p.  Nevertheless, there was no prejudice because the VE's description of the job as she knew it to be performed based on her experience makes clear that no vibrations or dangerous machinery would be involved in the type of work she was describing.  *Newton*, 209 F.3d at 458.  Thus there is no likelihood that the VE would have changed her mind when presented with the conflict.  *Romine*, 454 F. Supp. 2d at 628-29.

Consequently, the ALJ's determination that there was other work Plaintiff could perform in light of her RFC is supported by substantial evidence.  Accordingly, Defendant is entitled to summary judgment on this ground.

**B.     Whether the ALJ erred in finding that there are a significant number of jobs available**

Plaintiff asserts that the ALJ erred in finding that there are a significant number of jobs in the economy that she can perform because 1,000 jobs in Texas is not a sufficient number considering the unreliable nature of the VE's testimony, the size of Texas, and Plaintiff's limited

ability to travel given her doctors' advice based on the medications she takes. Doc. 13 at 13-15. Defendant responds that the ALJ found 80,000 jobs to be available in the national economy, which is a significant number considering that the Court of Appeals for the Fifth Circuit ruled in an unpublished opinion that 50,000 jobs was sufficient. Doc. 14 at 8.

The Social Security regulations provide that the phrase jobs "existing in the national economy" does not encompass the entire United States, but rather, the Commissioner considers "that work exists . . . in significant numbers when it exists in significant numbers either in the region where you live or in several other regions of the country . . . Isolated jobs that exist in only very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" 20 C.F.R. § 404.1566. However, "it does not matter whether . . . [w]ork exists in the immediate area in which you live." Id.

The Court of Appeals for the Fifth Circuit has not expressed in a published opinion a number which represents a "significant number." However, the Sixth Circuit held that a "judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the [VE]'s testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding 1,350 local jobs significant). This test has been adopted by the Eighth Circuit and the Tenth Circuit as well. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (650-900 jobs in state sufficient); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 regional jobs sufficient); *see also Johnson v. Chater*, 108 F.3d 178, 180 & n.3 (8th Cir. 1997) (200 local and 10,000 national jobs sufficient); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 jobs sufficient); *Allen v. Bowen*, 816

F.2d 600, 602 (11th Cir. 1987) (174 local, 1,600 state, and 80,000 nationwide jobs sufficient); *Doddy v. Comm'r, Soc. Sec. Admin.*, No. 12-cv-384, 2014 WL 1268567, at *7 (E.D. Tex. 2014) (citing to *Hall* and finding that 3,400 jobs in the state and 61,000 jobs in the national economy represented a significant number); *Caronia v. Colvin*, No. 12-cv-595-Y, 2013 WL 5192904, at *7 (N.D. Tex. 2013) (Means, J.) (2,000 to 3,000 jobs in Texas and 50,000 in national economy sufficient); *Thompson v. Astrue*, No. 08-cv-1134-G, 2010 WL 2816677, at *7 (N.D. Tex. 2010) (Kaplan, M.J.) (applying the *Hall* factors and finding that 105,000 jobs in the national economy was sufficient), *adopted by* 2010 WL 2816680 (N.D. Tex. 2010) (Fish, J.); *Mercer v. Halter*, No. 00-cv-1257, 2001 WL 257842, at *6 (N.D. Tex. 2001) (500 jobs in Texas and 5,000 jobs nationwide sufficient) (Bleil, M.J.); *but cf. Merical v. Sec'y of Health and Human Serv.*, 892 F.Supp. 843, 847 (E.D. Tex. 1995) (relying on *Hall* and holding that 870 jobs in Texas was not a "significant number."); *Walker v. Shalala*, No. H-93-2507, 1994 WL 171209, at *2 (S.D. Tex. 1994) (holding that 1,800 jobs in Texas and 18,000 nationally was not significant).  The Court of Appeals for the Fifth Circuit held in an unpublished opinion that 50,000 jobs in the national economy was a significant number.  *Lirley v. Barnhart*, 124 Fed. Appx. 283, 284 (5th Cir. 2005).

The VE in this case found that there were 80,000 nut and bolt assembler positions nationwide and approximately 1,000 in Texas.  Based on caselaw and section 404.1566, the Court concludes that this is a significant number.  Moreover, while Plaintiff may be limited in her ability to drive due to the medications she takes, she does not address the possibility that she could use an alternative means of transportation, such as having someone else drive her or using public transportation.  Accordingly, substantial evidence exists to support the ALJ's decision that there are a significant number of jobs in the economy that she can perform.  Defendant is entitled to summary judgment on this point.

13

**C.       Whether the RFC was based on the record as a whole**

Plaintiff next argues that the ALJ's RFC was not based upon the record as a whole because the ALJ did not account for Plaintiff's upper extremity limitations caused by her carpal tunnel syndrome and rotator cuff injury.  Doc. 13 at 15-16.  Plaintiff asserts that the ALJ should have assessed Plaintiff's limited ability to reach, handle and finger in determining her RFC, and the failure to do so was harmful because the nut and bolt assembler job requires the ability to perform those tasks frequently.  Doc. 13 at 17-18.

Defendant responds that the ALJ considered and accounted for Plaintiff's alleged limitations by limiting her RFC to lifting ten pounds frequently and 20 pounds occasionally and only occasional crawling.  Doc. 14 at 8-9.  Further, Defendant contends that the mere fact that Plaintiff had been diagnosed with carpal tunnel syndrome and a rotator cuff tear does not correlate to a specific work-related limitation, especially considering the other medical evidence of record.  Doc. 14 at 9-10.

In determining the RFC in this case, the ALJ did not expressly take into account Plaintiff's prior shoulder and carpal tunnel injuries.  Nevertheless, she did limit Plaintiff to lifting lighter amounts of weight and to only occasional crawling, an activity which would put strain on one's upper body.  Such limitations may properly compensate for Plaintiff's carpal tunnel and shoulder impairments.  Even if they do not, however, there is still substantial evidence to support the ALJ's decision because the medical evidence does not justify additional limitations based on those impairments.  While Plaintiff did occasionally complain of shoulder or wrist discomfort, Doc. 11-10 at 34; Doc. 11-11 at 31, she had surgery to repair those injuries many years before her disability onset date and consistently exhibited a full range of motion and lack of pain in those joints upon examination, Doc. 11-10 at 37, 48; Doc. 11-11 at 54, 83.  Moreover, she

exhibited normal muscle tone, Doc. 11-11 at 98, was able to use her hands to fill out medical documentation, Doc. 11-10 at 38, and reported that she could move her hands without difficulty, Doc. 11-10 at 37-38, 44.  This is also consistent with Plaintiff's statements that she could cook light meals, grocery shop, wash dishes, bathe herself, crochet, do light housework, continued to babysit past her claimed onset date, and that her pain medication provided her with relief.  Doc. 11-3 at 43-45, 51, 54, 57-58; Doc. 11-10 at 35.  The Commissioner was entitled to resolve any conflicts in the evidence against Plaintiff.  *Perez v. Barnhart* 415 F.3d 457, 461 (5th Cir. 2005). Accordingly, the Commissioner is entitled to summary judgment on this issue.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 13, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 14, be **GRANTED**, and **t**he Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on April 28, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

15

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

16